Angela T. Quigless, J.
Jill L. Barden ("Wife") appeals from the judgment of the Circuit Court of St. Louis County modifying the dissolution decree dissolving her marriage to Theodore M. Barden ("Husband"). Wife asserts five points on appeal. Wife argues the trial court erred in modifying Husband's maintenance obligation as well as his child support obligation for Sophie and Stella, abating Husband's child support obligation for Emma, and awarding Husband the dependency tax exemption for Sophie.
Because the trial court exceeded the scope of this Court's mandate in Barden v. Barden , 492 S.W.3d 641 (Mo. App. E.D. 2016) when it abated Husband's child support obligation for Emma and awarded Husband the dependency tax exemption for Sophie, we reverse those portions of the trial court's judgment and remand those issues with specific instructions as set forth in this opinion. The trial court's judgment as to the modification of Husband's maintenance and child support obligations is affirmed.
Factual and Procedural Background
Because this is the third time this case has been before this Court, it is necessary we set forth the complete procedural history of the case as it is significant to the disposition of this appeal.
Husband and Wife have three children, Emma, Sophie, and Stella. Husband and Wife separated in February 2010, and their marriage was dissolved in November 2011. Pursuant to the judgment of dissolution of marriage, Husband was ordered to pay Wife child support in the amount of $1,383 per month for three children, and maintenance in the amount of $1,875 per month plus 35% of any gross commissions or bonuses Husband received through his *587 employment. At the time of dissolution, Husband earned approximately $260,000 per year, including commissions and bonuses, and Wife was unemployed.
In 2012, Husband was terminated from his job. It took him about six month to find new full-time employment. His new job paid approximately $50,000 annually. As a result of the decrease in his income, Husband filed a motion to modify the dissolution decree. On November 6, 2013, the trial court held a modification hearing, and subsequently entered a modified judgment, which, in relevant part, terminated Husband's obligation to pay maintenance to Wife, reduced his child support obligation to $861 per month, terminated his duty to assist in paying Emma's college expenses, and awarded Wife the right to claim all three children as exemptions for federal and state income tax purposes in 2013 and succeeding years.
Wife appealed the modified judgment, arguing the trial court erred in terminating Husband's maintenance obligation, and terminating Husband's duty to assist in paying Emma's college expenses. On appeal, this Court reversed the trial court's judgment as to both issues because the court relied on Wife's post-dissolution conduct, and the nature of the relationship between Husband and Emma. Barden v. Barden , 463 S.W.3d 799, 802 (Mo. App. E.D. 2015) (" Barden I "). On remand, this Court specifically instructed the trial court to reconsider (1) Husband's motion to modify maintenance, pursuant to the statutory standard set forth in Section 452.370,[1] and (2) Husband's obligation to pay for Emma's college expenses in accordance with the factors set forth in Forde v. Forde , 190 S.W.3d 521 (Mo. App. E.D. 2006). Barden I , 463 S.W.3d at 805-07. The judgment was affirmed in all other respects.
Thereafter, Wife filed a motion to reopen evidence. The trial court allowed limited discovery regarding Husband's income. Husband's tax return revealed he earned approximately $150,000 in 2014. Subpoenaed records from Husband's employer also revealed Husband earned nearly $239,000 between November 6, 2013 and August 5, 2015. However, the trial court denied Wife's motion to reopen evidence and entered its amended judgment in September 2015. The trial court found Husband had an annual salary of $50,000 and imputed an annual salary of $24,000 to Wife.[2] The trial court ordered Husband pay Wife maintenance in the amount of $500 per month and child support in the amount of $720 per month. The trial court made the maintenance and child support orders retroactive to March 1, 2013. The trial court also terminated Husband's duty to assist in paying Emma's college expenses.
Wife again appealed, arguing the trial court erred by using stale evidence to determine Husband's maintenance and child support obligations.[3] This Court reversed the trial court's modification of Husband's maintenance obligation, and, on remand, specifically instructed the trial court to consider the parties' current financial information when determining the appropriate amount of maintenance to award Wife, in accordance with the remand in *588 Barden I . Barden v. Barden , 492 S.W.3d 641, 644 (Mo. App. E.D. 2016) (" Barden II "). This Court also noted the trial court's calculation of Husband's child support obligation may need to be adjusted upon considering evidence of the parties' current finances. Id. at 644 n.3.
Following the remand, the trial court entered a pre-trial order allowing discovery with respect to changes in the parties' financial resources since November 2013. Thereafter, Husband filed a Motion to Abate Child Support, arguing, inter alia , his child support for Emma should be abated retroactive to August 2014 because Emma failed to provide her college transcripts and class schedules to Husband, and Emma lived with Husband during the summer of 2016 and spent no overnights with Wife.
On November 18, 2016, the trial court held a hearing on this Court's remand as well as Husband's motion to abate. In its judgment, the trial court, in relevant part, reduced Husband's maintenance obligation to $875 per month, retroactive to March 1, 2013, and reduced Husband's child support obligation for Sophie and Stella to $935 per month, effective July 1, 2016. The trial court also abated child support for Emma between September 1, 2014 and May 31, 2016, as well as between September 1, 2012 and February 28, 2013, and ordered Wife to pay Husband $1,000. The trial court further gave Husband the right to claim Sophie as an exemption for federal and state income tax purposes in 2016 and succeeding years. Wife appeals.
Points Relied On
Wife asserts five points on appeal. In Point I, Wife argues the trial court erred in modifying maintenance Husband pays to Wife from $1,875 per month plus 35% of all commissions and bonuses earned to a flat $875 per month, retroactive to March 1, 2013, because said modification violates Section 452.370.1. In Point II, Wife argues the trial court erred in abating child support between September 1, 2012 and February 28, 2013 for Emma, and entering judgment in favor of Husband and against Wife in the amount of $1,000 because said abatement violates Section 452.340.7. In Point III, the trial court erred in abating child support between September 1, 2014 and May 31, 2016 for Emma because said abatement violates Section 452.340.5. In Point IV, Wife argues the trial court erred in departing from the presumed child support amount and setting child support for Sophie and Stella at $935 per month, effective July 1, 2016, because said departure violates Section 452.340 and this Court's holding in Barden I . In Point V, Wife argues the trial court erred in awarding Husband the dependency tax exemption for Sophie beginning in tax year 2016 because said departure violates Section 452.340.
Standard of Review
As with any court-tried case, we review a trial court's judgment modifying a dissolution decree pursuant to Murphy v. Carron , 536 S.W.2d 30 (Mo. banc 1976). Schneithorst v. Schneithorst , 473 S.W.3d 239, 246 (Mo. App. E.D. 2015). Accordingly, we will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. In re Marriage of Graham , 87 S.W.3d 898, 900 (Mo. App. E.D. 2002).
This Court gives great deference to the trial court's superior opportunity to adjudge the credibility of witnesses and the weight given their testimony. Hopkins v. Hopkins , 449 S.W.3d 793, 797 (Mo. App. W.D. 2014). We accept as true the evidence and inferences favorable to the trial court's judgment. Holtgrewe v. Holtgrewe , 231 S.W.3d 233, 235 (Mo. App. E.D. 2007).
*589 Discussion
Point I-Modification of Maintenance
In Point I, Wife argues the trial court erred in modifying maintenance Husband pays to Wife from $1,875 per month plus 35% of all commissions and bonuses earned to a flat $875 per month, retroactive to March 1, 2013, because said modification violates Section 452.370.1. Specifically, Wife argues (1) Husband failed to prove a substantial and continuing change in circumstances because his present income is not significantly lower than his income at the time of the dissolution judgment; (2) Husband presently earns sufficient income to pay the maintenance ordered in the dissolution judgement; (3) Wife cannot meet her reasonable needs with a lesser amount of maintenance; and (4) the trial court cannot force Wife to deplete her share of Husband's 401(k) awarded to her in the dissolution judgment to give Husband a lower maintenance obligation.
Section 452.370 governs modification of maintenance. Pursuant to Section 452.370.1, in order to modify a maintenance support award, there must be a showing of changed circumstances so substantial and continuing as to make the terms of the current support award unreasonable. The trial court must consider all financial resources of both parties when determining whether a substantial change in circumstances has occurred. Section 452.370.1; Swartz v. Johnson , 192 S.W.3d 752, 755 (Mo. App. W.D. 2006). "Changed circumstances sufficient to support modification must be proven by detailed evidence and must also show that the prior decree is unreasonable." Delsing v. Delsing , 409 S.W.3d 574, 577 (Mo. App. E.D. 2013). The party seeking modification bears the burden of showing the terms of the original decree are unreasonable. In re Marriage of Lindhorst , 347 S.W.3d 474, 476 (Mo. banc 2011).
Generally, a substantial and continuing change in circumstances warranting modification of maintenance exists when the obligor spouse is unable to pay maintenance at the assigned rate, or when the recipient of the support could meet her reasonable needs with a lesser amount of maintenance. Rustemeyer v. Rustemeyer , 148 S.W.3d 867, 870 (Mo. App. E.D. 2004). Although a decrease in the income of the spouse paying maintenance or an increase in the income of the spouse receiving maintenance are both relevant factors for the court to consider, neither alone requires the court to modify the amount of maintenance previously ordered. Id. The ultimate issue is whether these changes are sufficiently substantial and continuing so as to make the original terms of the decree unreasonable. Katsantonis v. Katsantonis , 245 S.W.3d 925, 928 (Mo. App. E.D. 2008).
Further, a change in circumstances must be unknown and unforeseeable at the time of the entry of the judgment that the spouse seeks to modify. Rustemeyer , 148 S.W.3d at 871. To warrant modification, the change in circumstances must involve a departure from prior known conditions, including those known at the time of dissolution. Shanks v. Shanks , 117 S.W.3d 718, 721 (Mo. App. E.D. 2003).
A. Husband's Income and Expenses
On appeal, Wife argues the trial court erred in decreasing Husband's maintenance obligation because his present income is not significantly lower than his income at the time of the dissolution judgment, and he has the ability to pay the original award of maintenance. We disagree.
A decrease in income of the spouse paying maintenance constitutes a substantial and continuing change in circumstances where the obligor spouse is *590 unable to meet his own reasonable needs and is also unable to pay the original maintenance obligation. See Draper v. Draper , 982 S.W.2d 289, 292 (Mo. App. W.D. 1998). Here, at the time of dissolution in 2011, Husband earned approximately $263,947 in yearly gross income. However, in 2012, Husband was terminated from his job, and, in 2013, his annual salary significantly decreased to approximately $50,000. On November 6, 2013, the date of the first modification hearing, Husband's reasonable monthly expenses were $5,279, which exceeded his monthly gross income of $3,878. Although, Husband's monthly gross income increased to $14,433 as of October 2016, his reasonable monthly expenses nearly tripled to $14,055. Notably, the calculation of Husband's reasonable monthly expenses does not include his child support obligation. Therefore, we find Husband has insufficient funds to meet his own reasonable financial needs while paying his child support obligation and continue paying the original monthly maintenance award. See id. at 293 (finding no substantial change where Husband had excess funds remaining after his child support obligation and other expenses were subtracted from his monthly income); Mendelsohn v. Mendelsohn , 787 S.W.2d 321, 324 (Mo. App. E.D. 1990) (modification of maintenance unwarranted where Husband could meet his own financial needs while paying his support obligation).
In addition to considering Husband's income and expenses, the trial court considered Husband's other financial resources, debts, and payments since dissolution, as permitted by Section 452.370.1. See Swartz , 192 S.W.3d at 755. Specifically, the trial court took into consideration that Husband's debt increased from $13,130 in 2013 to $20,510 as of October 2016. The trial court also found Husband has incurred the following expenses: Husband purchased vehicles for Sophie and Stella, which have values of $5,474 and $2,622, respectively, and pays expenses for the vehicles, including taxes, maintenance, insurance, gas, and licenses; Husband makes monthly payments of $1,156 on Emma's vehicle and also pays the expenses for her vehicle; Husband makes monthly payments of $1,317 for Emma's college expenses; and Husband spent $3,000 building a room for Emma in his home. Based on the totality of Husband's financial circumstances, we find a substantial and continuing change in circumstances has occurred, making the original terms of the modification decree unreasonable and justifying a decrease in Husband's maintenance obligation. See Katsantonis , 245 S.W.3d at 928.
Although Wife points to Husband's "many overstatements of expenses" in his Statement of Income and Expenses, and essentially requests we reweigh the accuracy of those expense statements and compare them with any contradictory testimony presented at trial, we decline to do so here. The trial court has broad discretion to modify Wife's maintenance obligation. See Almuttar v. Almuttar , 479 S.W.3d 135, 140 (Mo. App. W.D. 2016). We recognize the superior position of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles that are not revealed in the trial transcript. Forbes v. Forbes , 133 S.W.3d 508, 511 (Mo. App. E.D. 2004). In determining the credibility of the two parties and weighing the evidence presented regarding their respective financial resources the trial court concluded there was a substantial and continuing change in circumstances to justify modification of the support decree, and the court decreased Wife's monthly maintenance award accordingly. These factual findings and determinations, which are supported by the evidence presented, must be given deference. Almuttar , 479 S.W.3d at 140.
*591 B. Wife's Income and Expenses
Although our review of Husband's income and expenses is sufficient to support a finding that a decrease in maintenance is appropriate in this case, we further address Wife's argument that she is unable to meet her reasonable needs with a lesser amount of maintenance. Wife also asserts the trial court erred when it determined she could meet her reasonable needs through the depletion of her share of Husband's 401(k) award. We find Wife's arguments unpersuasive.
At the hearing, the evidence presented was that Wife was unemployed at the time of dissolution. As of November 6, 2013, Wife earned $728 in monthly gross income, and her reasonable monthly expenses were $7,895. As of November 18, 2016, Wife's gross monthly income increased to $781, and her reasonable monthly expenses decreased to $7,135. In its judgment, the trial court imputed an annual salary of $24,000 to Wife, and subsequently concluded a decrease in maintenance was justified because Wife's monthly income increased and her expenses decreased since dissolution. Specifically, the court stated:
If, upon dissolution of the marriage, when Wife had no earnings and greater expenses for herself than on the date of the final evidentiary hearing, she required maintenance of $1,875.00 per month, then, on the date of the evidentiary hearing, if Wife has gross wages of $2,000 per month and reduced expenses, she requires maintenance of $875.00 per month.
On appeal, however, Wife argues $875 per month in maintenance fails to cover the shortfall-approximately $4,300-between her monthly income and expenses.
There is a long-standing public policy in Missouri that maintenance is awarded for the sole purpose of "providing support until the more dependent spouse can achieve a 'reasonable self-sufficiency' in the light of the statutory factors." Hammer v. Hammer , 139 S.W.3d 239, 244 (Mo. App. W.D. 2004). The dependent spouse has a duty to become self-supporting and seek full-time employment. Rende v. Rende , 191 S.W.3d 56, 58 (Mo. App. E.D. 2006) ; Sheerin v. Sheerin , 475 S.W.3d 704, 707 (Mo. App. E.D. 2015). This duty contemplates exertion of reasonable efforts to attain self-sufficiency, and the spouse receiving maintenance will not be permitted to benefit from inaction. Hileman v. Hileman , 909 S.W.2d 675, 679 (Mo. App. E.D. 1995).
In this case, we recognize the trial court imputed a $24,000 annual salary to Wife, and we acknowledge the shortfall between Wife's monthly income and her expenses. However, as discussed supra , this does not change the fact that Husband would be unable to meet his own reasonable needs, including making his monthly child support payments, absent a decrease in maintenance. See Rustemeyer , 148 S.W.3d at 870. As such, it is now incumbent upon Wife to undertake reasonable efforts to live within her means or seek employment that provides her with greater income so she does not have to continue depleting her share of the 401(k). See Milligan v. Helmstetter , 15 S.W.3d 15, 22 (Mo. App. W.D. 2000). Notably, although Wife works part-time, the trial court found Wife has made "no effort" to seek full-time employment. "[M]aintenance is not awarded for the purposes of building an estate or accumulating capital." Fischer v. Fischer , 66 S.W.3d 43, 44 (Mo. App. E.D. 2001). As the trial court noted, Wife has a bachelor's degree from Southern Illinois University, and is eligible to utilize its career center, which provides access to a career advisor, and assists with resume development and job leads. Wife also does not suffer from any diagnosed diseases, illnesses, or injuries, and, therefore, is fully capable of maintaining full-time employment to meet *592 her reasonable monthly expenses if she so chooses.
Accordingly, we find the trial court did not err in modifying Husband's maintenance obligation to Wife because Husband met his burden of proving a substantial and continuing change in circumstances, which made the terms of the original decree unreasonable. See Lindhorst , 347 S.W.3d at 476. Point I is denied.
Point IV-Modification of Child Support
In Point IV, Wife argues the trial court erred in departing from the presumed child support amount and setting child support for Sophie and Stella at $935 per month, effective July 1, 2016, because said departure violates Section 452.340, and this Court's holding in Barden I . Specifically, Wife argues the trial court premised its departure on the post-dissolution conduct of Wife, and speculative, rather than actual, changes in circumstances. We disagree.
In determining a proper child support amount, Rule 88.01[4] and Section 452.340 direct the trial court to apply a two-step analysis. Vaughn v. Bowman , 209 S.W.3d 509, 514 (Mo. App. E.D. 2006). First, the trial court is required to calculate the child support amount pursuant to the Form 14, either by accepting one of the parent's Form 14 calculations or by performing its own Form 14 calculation. Malawey v. Malawey , 137 S.W.3d 518, 526-27 (Mo. App. E.D. 2004). Second, the trial court must consider all relevant factors to determine whether to rebut the presumed Form 14 amount as being unjust and inappropriate. Fowler v. Fowler , 504 S.W.3d 790, 801 (Mo. App. E.D. 2016). To determine the proper amount of child support, the trial court balances the needs of the children with the noncustodial parent's ability to pay. Weaks v. Weaks , 821 S.W.2d 503, 507 (Mo. banc 1991).
The presumed child support amount calculated pursuant to Form 14 may be rebutted upon a finding that it is unjust and inappropriate after consideration of all relevant factors, including the factors outlined in Section 452.340.1.[5] Section 452.340.9; see also Malawey , 137 S.W.3d at 527. There is no mandatory worksheet or formula to be used in determining whether a Form 14 amount is unjust and inappropriate, and the court may consider non-Form 14 factors in making its rebuttal determination. Woolridge v. Woolridge , 915 S.W.2d 372, 379 (Mo. App. W.D. 1996). Rule 88.01 provides that to rebut the presumed child support calculation, the trial court should enter a specific finding on the record that the presumed amount is unjust and inappropriate.
Here, the trial court performed its own Form 14 calculation. However, the court rebutted the presumed child support amount as unjust and inappropriate, and ordered Husband to pay child support in the amount of $935 per month for Sophie and Stella based on the following factors:
(a) upon conclusion of academic year 2015-2016, Wife told Emma to "go live with" Husband, who, as a result, will have full responsibility for support of Emma, including Emma's costs at *593 Southeast Missouri State University during her junior and senior years; (b) since Sophie and Stella have attained age 16, in 2015 and 2016 respectively, Husband has paid the expenses related to ownership and operation of Sophie's and Stella's motor vehicles; (c) Wife has told Sophie and Stella by text message that Wife plans to "give more custody" to Husband so that Husband still pays Wife support for Sophie and Stella, but Wife "can spend it on myself"; and (d) Wife has told Sophie and Stella that they "will not be getting one red cent from me moving forward" and that "groceries will be slim[.]"
On appeal, Wife argues there was no legal or factual basis for departure from the presumed child support amount. Specifically, Wife argues it is irrelevant that Emma lives with Husband because she was removed from the child support calculation, and Wife's statements to Sophie and Stella were speculative and amounted to hearsay. We disagree.
Here, the trial court properly considered the factors outlined in Section 452.340.1 when rebutting the Form 14 as unjust and inappropriate. Specifically, the trial court considered the financial resources and needs of Husband when it considered Husband's new responsibility to fully support Emma, and his expenses related to the ownership, operation, and maintenance of Sophie and Stella's vehicles. See Section 452.340.1(2). In considering Wife's text messages to the children about giving Husband more custody, spending the child support payments on herself, and that groceries would be slim, the trial court took into account the amount of time the children spend with each parent and the reasonable expenses associated with the custody or visitation arrangements. See Section 452.340.1(5).
Moreover, even if the factors considered by the trial court do not fall under Section 452.340.1, as noted above, there is no mandatory worksheet or formula when determining whether a Form 14 amount is unjust and inappropriate, and the court may consider non-Form 14 factors. See Woolridge , 915 S.W.2d at 379. The trial court is afforded broad discretion and flexibility in the final determination of child support awards. Thorp v. Thorp , 390 S.W.3d 871, 882 (Mo. App. E.D. 2013). As such, in determining whether the trial court abused its discretion in finding the presumed support amount is unjust and inappropriate, we look at whether the evidence is palpably insufficient to support the award. State ex rel. Mosier v. Klein , 83 S.W.3d 15, 17 (Mo. App. E.D. 2002) ; McGowan v. McGowan , 43 S.W.3d 857, 861-62 (Mo. App. E.D. 2001). Here, the trial court heard testimony that Husband pays Emma's monthly college expenses, makes monthly payments on Emma's vehicle, and built Emma a room in his home. Husband also purchased vehicles for Sophie and Stella, and pays expenses for the vehicles, including taxes, maintenance, insurance, gas, and licenses. Wife also admitted sending the text messages to Sophie and Stella, regarding custody and support. The trial court was free to accept or reject all, part or none of the testimony of the witnesses, and we defer to its credibility determinations. See Blair v. Blair , 147 S.W.3d 882, 886 (Mo. App. W.D. 2004). Accordingly, we find the trial court did not err in departing from the presumed child support amount because the factors considered were supported by evidence presented at the hearing, and, thus, the evidence was not palpably insufficient to support the award. Point IV is denied.
Points II, III, and V-Abatement and Dependency Tax Exemption
For ease of analysis, we address Points II, III, and V together. In Point II, *594 Wife argues the trial court erred in abating child support between September 1, 2012 and February 28, 2013 for Emma, and entering judgment in favor of Husband and against Wife in the amount of $1,000. In Point III, Wife argues the trial court erred in abating child support between September 1, 2014 and May 31, 2016 for Emma. In Point IV, Wife argues the trial court erred in awarding Husband the dependency tax exemption for Sophie beginning in tax year 2016. We find the trial court was without authority to enter findings regarding abatement of child support and revisiting the issue of dependency tax exemption because the judgment exceeded the scope of this Court's mandate in Barden II .
On remand, the scope of the trial court's authority is defined by the appellate court's mandate. Guidry v. Charter Commc'ns, Inc. , 308 S.W.3d 765, 768 (Mo. App. E.D. 2010). Following remand the trial court is required to render judgment in conformity with the appellate court's mandate and accompanying opinion. Pope v. Ray , 298 S.W.3d 53, 57 (Mo. App. W.D. 2009). We review the question of whether the trial court followed the mandate de novo . Guidry , 308 S.W.3d at 768.
There are two types of remands: (1) a general remand, which does not provide specific directions and leaves all issues open to consideration in the new trial; and (2) a remand with directions, which requires the trial court to enter a judgment in conformity with the mandate. Bryant v. Bryant , 351 S.W.3d 681, 687 (Mo. App. E.D. 2011). "Where the mandate contains express instructions that direct the trial court to take a specified action, the trial court has no authority to deviate from those instructions." Guidry , 308 S.W.3d at 768. Any trial court proceeding that is contrary to the mandate's directions is considered unauthorized, rendering the judgment null and void. In re Marriage of Bullard , 18 S.W.3d 134, 138 (Mo. App. E.D. 2000).
Our mandate in Barden II provided:
The Court, being sufficiently advised of and having considered the premises, adjudges that the judgment rendered by the St. Louis County Circuit Court in cause No. 10SL-DR01020 be reversed and the cause remanded to the aforesaid court with instructions to consider evidence of the parties' current finances when determining Husband's maintenance obligation to Wife in accordance with this Court's opinion delivered June 21, 2016.[6]
(emphasis added). Accordingly, Barden II 's mandate constituted a remand with directions because it directed the trial court to take a specific action.
In Barden II , we found the trial court erred when it used stale evidence to determine Husband's maintenance obligation. Barden II , 492 S.W.3d at 644. Following Barden I , the trial court allowed limited discovery regarding Husband's income. Husband's tax returns revealed he earned approximately $150,000 in 2014, and subpoenaed employment records demonstrated he earned approximately $239,000 between November 6, 2013 and August 5, 2015. Id. at 642. However, the trial found Husband had an annual salary of $50,000 and imputed an annual salary of $24,000 to Wife. Id. We concluded the trial court erred in ignoring the evidence of Husband's increase in income after it allowed discovery on the issue. We reversed *595 and remanded to the trial court with specific instructions to consider evidence of the parties' current finances when calculating Husband's maintenance obligation, and noted the trial court's calculation of Husband's child support obligation may also need to be readjusted. Id. at 644. However, we did not remand for a new trial. "[W]here an appellate court remands with specific directions , the trial court is duty-bound to render a judgment that strictly conforms to that mandate. The court is without power to modify, alter, amend, or otherwise depart from those directions." Pope , 298 S.W.3d at 58 (internal citation omitted) (emphasis in original).
As we view our mandate in Barden II , the trial court's only task on remand was to determine the parties' current finances, and calculate Husband's maintenance and child support obligations accordingly. As discussed supra in Points I and IV, the trial court properly modified maintenance and child support in accordance with our mandate. However, the trial court then proceeded to deviate from our limited instructions when it reopened evidence and made additional findings outside the scope of our mandate. See Edmison v. Clarke , 61 S.W.3d 302, 310 (Mo. App. W.D. 2001) (trial court has not authority to deviate from express instructions). Specifically, the trial court heard evidence on Husband's motion to abate child support, and subsequently abated child support for Emma between September 11, 2014 and May 31, 2016 because Emma failed to provide her college transcripts and class schedules to Husband. In addition, the trial court abated child support for Emma between September 1, 2012 and February 28, 2013, and entered judgment in favor of Husband and against Wife in the amount of $1,000. The trial court determined Husband was entitled to abatement after considering evidence presented from an August 24, 2012 hearing on Husband's Motion for Family Access Order.[7] Further, the trial court revisited the issue of dependency tax exemption, awarding Husband the tax exemption for Sophie, which it previously awarded Wife in the original modification judgment that was affirmed in Barden I . Husband did not appeal this issue following Barden I . This Court's remand in Barden II did not give the trial court the power to reopen the cause and have a new trial on the merits. See In re Marriage of Bullard , 18 S.W.3d at 138. Therefore, the portions of the trial court's third amended judgment regarding abatement and dependency tax exemption were contrary to our directive in Barden II , and exceeded the authority of the trial court on remand.
Accordingly, we reverse the trial court's findings abating child support for Emma between September 1, 2012 and February 28, 2013, and entering judgment in favor of Husband and against Wife in the amount of $1,000; abating child support for Emma between September 11, 2014 and May 31, 2016; and awarding Husband the dependency tax exemption for Sophie, as they exceeded the scope of our remand in Barden II . We remand to the trial court for those portions to be stricken from the judgment, and we affirm the judgment in all other respects.
Conclusion
We affirm the judgment as to Point I and IV, the modification of Husband's maintenance and child support obligations. We reverse the trial court's findings (1) abating child support for Emma between September 1, 2012 and February 28, 2013, and entering judgment in favor of Husband *596 and against Wife in the amount of $1,000; (2) abating child support for Emma between September 11, 2014 and May 31, 2016; and (3) awarding Husband the dependency tax exemption for Sophie, as they exceeded the scope of our remand in Barden II . We remand to the trial court for those portions to be stricken from the judgment, and we affirm the judgment in all other respects.
Gary M. Gaertner, Jr., P.J., and Robert M. Clayton III, J., concur.

All further statutory references are to RSMo (2000), unless otherwise indicated.

A court is permitted to impute income to a spouse seeking maintenance based on what the spouse could earn by using her best efforts to gain employment suitable to her capabilities. Silverstein v. Silverstein , 943 S.W.2d 300, 302 (Mo. App. E.D. 1997) ; Calhoun v. Calhoun , 156 S.W.3d 410, 414 (Mo. App. S.D. 2005).

Wife did not raise the issue of whether the trial court erred in terminating Husband's obligation to assist in paying Emma's college expenses.

All rule references are to Missouri Supreme Court Rules (2015) unless otherwise indicated.

These factors include: (1) the financial needs and resources of the child; (2) the financial resources and needs of the parents; (3) the standard of living the child would have enjoyed had the marriage not been dissolved; (4) the physical and emotional condition of the child, and the child's educational needs; (5) the child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and (6) the reasonable work-related child care expenses of each parent. Section 452.340.1(1)-(6).

This Court also concluded in a footnote that "[t]he trial court's calculation of Husband's child support obligations pursuant to Missouri Supreme Court Rule 88.01 (2015) may need to be adjusted upon considering evidence of the parties' current finances." Barden II , 492 S.W.3d at 644 n.3.

On January 17, 2012, Husband filed a Motion for Family Access Order, alleging, inter alia , that Wife had, without good cause, denied or interfered with Husband's physical custody of Emma.