In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

CAROL LOWE, ) No. ED108826
 )
 Respondent, ) Appeal from the Circuit Court
 ) of Franklin County
 vs. ) 16AB-CC00047
 )
MERCY CLINIC EAST )
COMMUNITIES, BRYAN MENGES, ) Honorable Stanley D. Williams
D.O., JAMES D. CASSAT, M.D., and )
MERCY HOSPITALS EAST )
COMMUNITIES, )
 )
 Appellants. ) Filed: November 16, 2021

 This case returns to our Court after the untimely passing of Vincent Lowe, who was the

underlying plaintiff in this case. The trial court entered an initial judgment entered upon a jury

verdict awarding Mr. Lowe a total of $12,820,990.51 in damages as a result of the alleged

medical negligence of defendants Mercy Clinic East Communities, Bryan Menges, D.O., James

D. Cassat, M.D., and Mercy Hospitals East Communities (collectively “Defendants”) that left

Mr. Lowe with short bowel syndrome. 1 In Lowe I, 2 our Court affirmed the $12,820,990.51

judgment, which consisted of a net award of $2,470,990.51 in past economic and past non-

economic damages, $900,000.00 in future non-economic damages, and $9,450,000.00 in future

1
 Short bowel syndrome is caused by the loss of a significant portion of the small intestine resulting in nutrient
malabsorption and difficulty in forming fecal matter.
2
 All references to Lowe I are to Lowe v. Mercy Clinic East Communities, 592 S.W.3d 10 (Mo. App. E.D. 2019).
medical damages. In Lowe I, our Court also determined Mr. Lowe was entitled to damages

pertaining to attorney’s fees in the amount of $5,128,396.00 pursuant to a contingency fee

agreement entitling Mr. Lowe’s attorneys to 40% of Mr. Lowe’s net jury verdict of

$12,820,990.51, and we remanded the cause with specific directions including giving the trial

court the express authority to award litigation expenses. After Lowe I was issued by our Court,

Mr. Lowe died, which resulted in Defendants being relieved of liability for a total of

$3,115,096.18 plus interest in annual future medical damages installment payments. After Mr.

Lowe’s death, Respondent Carol Lowe, Personal Representative of the Estate of Vincent Lowe,

was substituted as a party for Mr. Lowe. Then, Lowe I was mandated and the cause was

remanded to the trial court to determine the impact of Mr. Lowe’s death upon the proceedings,

which is also the central issue in this appeal.

 Defendants Mercy Clinic East Communities (individually “Mercy Clinic”), Bryan

Menges, D.O. (individually “Dr. Menges”), James D. Cassat, M.D. (individually “Dr. Cassat”),

and Mercy Hospitals East Communities (individually “Mercy Hospitals”) appeal the trial court’s

July 1, 2020 amended judgment (“July 2020 amended judgment”) awarding the Estate of

Vincent Lowe a total of $9,707,839.62 in damages (consisting of a total of $5,215,330.40 in

damages pertaining to attorney’s fees and litigation expenses and a total of $4,492,509.22 in past

economic damages, past non-economic damages, future non-economic damages, and medical

damages). Defendants specifically challenge portions of the July 2020 amended judgment

awarding the Estate of Vincent Lowe a total of $5,215,330.40 in damages pertaining to

attorney’s fees and litigation expenses ($5,128,396.00 and $86,934.40, respectively) and a total

of $1,121,518.71 in medical damages.

 We affirm the trial court’s July 2020 amended judgment awarding the Estate of Vincent

Lowe a total of $9,707,839.62 in damages.

 2
 I. BACKGROUND

 As indicated above, this case has a lengthy and unique history. This history consists of:

(A) the relevant facts and procedural posture preceding the first appeal; (B) the relevant portions

of this Court’s opinion in Lowe I, 592 S.W.3d 10; (C) the relevant procedural posture occurring

after this Court’s issuance of the Lowe I opinion and through this Court’s mandate of the Lowe I

opinion; and (D) the relevant procedural posture occurring on remand and through the instant

appeal.

A. The Relevant Facts and Procedural Posture Preceding the First Appeal
 On March 9, 2016, underlying plaintiff Mr. Lowe brought this medical negligence action

against Dr. Menges and Dr. Cassat, and their respective employers, Mercy Hospitals and Mercy

Clinic. Mr. Lowe specifically alleged in his medical negligence action that because of

Defendants’ negligent failure to timely diagnose and treat the condition known as mesenteric

ischemia which was causing inadequate blood supply to Mr. Lowe’s intestines, a substantial

portion of Mr. Lowe’s lower bowel had to be surgically removed, and as a result, he suffered

injuries including short bowel syndrome 3 and required extensive ongoing medical care.

 A jury trial took place from October 30, 2017 to November 3, 2017. The evidence at trial

presented by underlying plaintiff Mr. Lowe showed, inter alia, that underlying plaintiff Mr.

Lowe’s life expectancy was 25.7 years and that Mr. Lowe was entitled to a maximum total range

of $18,046,815.31 to $19,951,480.81 in future medical damages. 4 On November 3, 2017, the

jury found in favor of Mr. Lowe, returning a verdict for $1,745,545.01 in past economic

3
 See footnote 1 of this opinion.
4
 At trial, underlying plaintiff Mr. Lowe offered into evidence a life table, Mr. Lowe’s trial exhibit number 72,
setting out the life expectancy of a male similar to Mr. Lowe at 25.7 years. Underlying plaintiff Mr. Lowe also
adduced testimony of Jan Klosterman, an expert in life care planning, to establish both Mr. Lowe’s life expectancy
of 25.7 years and the cost of his future medical needs. Ms. Klosterman opined Mr. Lowe’s future medical needs
would be in the total range of $18,046,815.31 to $19,951,480.81 if the jury believed Mr. Lowe’s life expectancy was
25.7 years and if the jury believed Mr. Lowe would need all of the items testified to by Mr. Klosterman.
 3
damages, $1,000,000.00 in past non-economic damages, $1,000,000.00 in future non-economic

damages, and $10,500,000.00 in future medical damages, for a total of $14,245,545.01 in

damages. The jury made comparative fault assessments of 65% to Dr. Menges and Mercy

Hospitals, 25% to Dr. Cassat and Mercy Clinic, and 10% to Mr. Lowe, resulting in Mr. Lowe

obtaining a net verdict of $12,820,990.51.

 The trial court then entered an initial judgment against Defendants, 5 pursuant to the jury’s

November 3, 2017 damages and comparative fault assessments, awarding underlying plaintiff

Mr. Lowe a net verdict of $12,820,990.51 in damages including a total of $2,470,990.51 in past

economic and past non-economic damages to be paid immediately.

 With respect to the remaining $10,350,000.00 in future damages (consisting of

$900,000.00 in future non-economic damages and $9,450,000.00 in future medical damages),

Defendants invoked their right under section 538.220.2 RSMo 2016 6 to have the future damages

paid out in whole or in part in periodic payments. Consistent with the evidence presented by

underlying plaintiff Mr. Lowe at trial, the trial court’s initial judgment found Mr. Lowe’s life

expectancy was 25.7 years, a calculation that began on the date of jury’s November 3, 2017

verdict. The trial court’s initial judgment ordered the $900,000.00 in future non-economic

5
 There were technically two initial judgments entered against Defendants after the jury’s November 3, 2017 verdict:
one on November 3, 2017 and one on February 23, 2018. For ease of reading and to be consistent with this Court’s
previous description of the November 3, 2017 and February 23, 2018 judgments as a singular judgment, see
generally Lowe I, 592 S.W.3d at 17, we will refer to the November 3, 2017 and February 23, 2018 judgments
collectively as the trial court’s “initial judgment.”
6
 All further references to section 538.220 are to RSMo 2016, which is the version of the statute in effect from
August 28, 2005 to the present. We note that in Williams v. Mercy Clinic Springfield Communities, 568 S.W.3d
396, 404, 420 (Mo. banc 2019), the Missouri Supreme Court held section 538.220.2 was unconstitutional as applied
to the underlying plaintiff in that case “because payment of future medical damages at a different interest rate than
the interest rate used to compute the present value of the jury’s award deprive[d] [the plaintiff] of the full value of
the award and violate[d] her due process rights.” This holding does not apply to the circumstances of the instant
case. See Lowe I, 592 S.W.3d at 17, 31-32 (similarly finding, distinguishing the record in Williams, and rejecting
underlying plaintiff Mr. Lowe’s claim in the first appeal asserting that the portion of the trial court’s initial judgment
applying a fixed interest rate of 1.48% derived from section 538.220.2 deprived him of the full value of the jury’s
award and violated his constitutional rights); see also section 538.220.2 (providing in relevant part that “[t]he court
shall apply interest on . . . future [medical] periodic payments at a per annum interest rate no greater than the coupon
issue yield equivalent, as determined by the Federal Reserve Board, of the average accepted auction price for the last
auction of fifty-two-week United States Treasury bills settled immediately prior to the date of the judgment”).
 4
damages to be paid in two annual installments of $450,000.00, with the payment for the first year

due on the date of the jury’s November 3, 2017 verdict – and the payment for the second year

due on November 3, 2018. Regarding the $9,450,000.00 in future medical damages, the trial

court’s initial judgment established a 26-year periodic payment schedule, based on Mr. Lowe’s

life expectancy of 25.7 years, that ordered annual payments of: $988,134.76 to be paid for year

one immediately (with the payment due on the date of the jury’s November 3, 2017 verdict);

$778,638.76 to be paid for years two through five (with the payment for year two due on

November 3, 2018); $707,486.64 to be paid for years six through ten; $113,117.31 to be paid for

years eleven through twenty-five, and $113,117.35 to be paid for year twenty-six. The court also

made all future damages payments subject to the fixed interest rate of 1.48 percent derived from

section 538.220.2.

 Subsequently, Defendants appealed the trial court’s initial judgment, and Mr. Lowe

cross-appealed.

B. The Relevant Portions of this Court’s Opinion in Lowe I, 592 S.W.3d 10

 On October 1, 2019, this Court issued its opinion in Lowe I, reversing the trial court’s

initial judgment awarding damages only to the limited extent that, (1) the trial court, in violation

of section 538.220.2, erred in its calculation of the amounts of periodic future medical damages

payments because the periodic payments ordered by the court were in varying, unequal amounts,

and (2) the trial court, in violation of section 538.220.4, erred in failing to award underlying

plaintiff Mr. Lowe an “immediate payment of a lump sum [of damages] sufficient to cover” “his

attorney’s fees which amounted to $5,128,396[.00],” pursuant to a contingency fee agreement

entitling Mr. Lowe’s attorneys to “40% of net to Plaintiff[,]” i.e., 40% of the jury’s November 3,

 5
2017 “net [damages] verdict of $12,820,990[.51].” Lowe I, 592 S.W.3d at 16, 17-18, 29-31, 30,

30 n.12, 31, 15-32. 7

 The trial court’s initial judgment was affirmed “[i]n all other respects.” Id. at 17-18. In

other words, as relevant to this appeal, and taking into account the entirety of the trial court’s

initial judgment and the entirety of this Court’s decision in Lowe I, 592 S.W.3d at 15-32, the trial

court’s initial judgment against Defendants was affirmed to the extent, (1) the initial judgment

awarded underlying plaintiff Mr. Lowe a net verdict of $12,820,990.51 in damages consisting of

a total of $2,470,990.51 in past economic and past non-economic damages to be paid

immediately, a total of $900,000.00 in future non-economic damages to be paid beginning on the

date of the jury’s November 3, 2017 verdict, and a total of $9,450,000.00 in future medical

damages to be paid beginning on the date of the jury’s November 3, 2017 verdict; (2) the initial

judgment awarded the future medical damages to be paid pursuant to a periodic payment

schedule based on the trial court’s finding that Mr. Lowe’s life expectancy was 25.7 years, a

calculation that began on the date of jury’s November 3, 2017 verdict; (3) the initial judgment

found the first payment of Mr. Lowe’s future medical damages was due on November 3, 2017;

(4) the initial judgment found the second payment of Mr. Lowe’s future medical damages

payments was due on November 3, 2018; and (5) the initial judgment found all future damages

payments are subject to the fixed interest rate of 1.48 percent derived from section 538.220.2.

See Lowe I, 592 S.W.3d at 15-32.

 Importantly, our Court in Lowe I “remanded [the case] for entry of a new judgment in

accordance with th[e] [Lowe I] opinion.” See id. at 17-18. The holdings of the Lowe I opinion

gave the trial court specific instructions on remand with respect to awarding damages pertaining

7
 This Court’s citation to Lowe I in its entirety, i.e., Lowe I, 592 S.W.3d at 15-32, is necessary to support our finding
that Lowe I reversed the trial court’s judgment awarding damages only to the limited extent described above.
 6
to attorney’s fees, damages pertaining to litigation expenses, and future medical damages. See

id. at 17-18, 29-31. With respect to awarding damages pertaining to attorney’s fees on remand,

our Court held “because here the trial court was timely informed that [Mr. Lowe] had a

contingency fee agreement with his attorneys, the court [is] required to order the immediate

payment of a lump sum [of damages] sufficient to cover [Mr.] Lowe’s attorney’s fees.” Id. at 29

(internal footnote omitted). Regarding an award of damages pertaining to litigation expenses on

remand, Lowe I explicitly held the trial court has discretion to “fix a lump sum [damages award]

amount sufficient . . . to cover [Mr.] Lowe’s . . . expenses.” Id. at 31. And finally, with respect

to the trial court’s award of future medical damages on remand, our Court in Lowe I held, (1) the

trial court has “authority to determine what part of the future medical damages shall be subject to

the [periodic] payment schedule”; (2) the trial court “ha[s] discretion . . . on remand, to order a

larger or smaller immediate lump sum payment [than the $988,134.76 immediate lump sum

payment the trial court ordered in its initial judgment] to account for [Mr.] Lowe’s particular

medical needs with the remainder of the future damages to be paid out periodically in the

future”; and (3) “once the [trial] court determine[s] how much of [Mr.] Lowe’s future damages

[are] paid out in future periodic payments, under [section] 538.220.2 those payments [are]

required to be equal.” Lowe I, 592 S.W.3d at 29 (citing and partially quoting Watts v. Lester E.

Cox Medical Centers, 376 S.W.3d 633, 647 (Mo. banc 2012)).

C. The Relevant Procedural Posture Occurring After this Court’s Issuance of the
 Lowe I Opinion and Through this Court’s Mandate of the Lowe I Opinion
 In mid-October 2019, Defendants Mercy Hospitals and Dr. Menges filed a motion for

rehearing and/or application for transfer in this Court, and Defendants Mercy Clinic and Dr.

Cassat filed a motion for rehearing, rehearing en banc, and an application for transfer in this

Court (collectively “Defendants’ post-opinion motions”).

 7
 Subsequently, underlying plaintiff Mr. Lowe died on October 23, 2019. Then,

Respondent Carol Lowe, Personal Representative of the Estate of Vincent Lowe, filed a motion

requesting this Court to substitute the Estate of Vincent Lowe as the party in place of Mr. Lowe.

Defendants Mercy Hospitals and Dr. Menges then filed a response asking this Court to, inter

alia, vacate its opinion in Lowe I:

 . . . Under section 538.220, and in light of the death of Mr. Lowe, at least a very
 substantial portion of . . . damages [referenced in the Lowe I opinion] cannot
 properly be payable. [Defendants Mercy Hospitals and Dr. Menges] cannot
 properly be liable for future damages that are no longer payable, and Mr. Lowe’s
 counsel cannot properly be entitled to fees based on a percentage of damages that
 are no longer payable. Therefore, the basis of the opinion no longer exists.

 The judgment should be vacated, and the cause should be remanded to the circuit
 court. The circuit court should be directed to consider whether any future damages
 remain payable, and if so, the amount. If a new judgment is entered, the parties
 should be permitted to commence a new appeal addressed to the new judgment
 . . ..

 On December 4, 2019, this Court entered an order denying Defendants’ post-opinion

motions; granting the motion for substitution filed by Carol Lowe, Personal Representative of the

Estate of Vincent Lowe; and denying Defendants Mercy Hospitals and Dr. Menges’s request to

vacate the opinion in Lowe I. This Court’s December 4 order specifically provides in relevant

part:

 . . . Appellants [Mercy Hospitals and Dr. Menges] raise multiple issues in their
 response [to the motion for substitution] concerning the payment of future medical
 damages after a party has died and ask that this [C]ourt reverse the trial court’s
 judgment or, in the alternative, grant their motion for rehearing, vacate the
 judgment, and remand this action to the trial court to consider the motion for
 substitution and issue a new judgment in light of the death of [Mr.] Lowe.
 Appellants [Mercy Hospitals and Dr. Menges’s] requests are all denied.

 . . . [The] motion for substitution is granted. Carol Lowe, Personal Representative
 of the Estate of Vincent Lowe, is ordered substituted for Cross-Appellant.
 Appellants [Mercy Hospitals and Dr. Menges’s] motion for rehearing and/or
 application for transfer is denied. Appellants [Mercy Clinic and Dr. Cassat’s]
 motion for rehearing, rehearing en banc and application for transfer are denied.

 8
Defendants then filed applications for transfer in the Missouri Supreme Court on December 19,

2019, which were denied on February 18, 2020.

 This Court issued its mandate in Lowe I on February 20, 2020, and the mandate was filed

in the trial court on February 25, 2020. Our Court’s mandate provides in relevant part:

 Th[is] Court, being sufficiently advised of and having considered the premises,
 adjudges that [the trial court’s initial] judgment rendered by the Franklin County
 Circuit Court in cause No. 16AB-CC00047 be reversed in part as to the award of
 damages pertaining to attorneys’ fees and to the periodic payment of future
 damages and the cause [be] remanded to the aforesaid court for further proceedings
 in accordance with the Court’s opinion and be affirmed in all other respects in
 accordance with this Court’s opinion [in Lowe I issued on] October 1, 2019 . . ..

D. The Relevant Procedural Posture Occurring on Remand and Through the Instant
 Appeal
 On remand after this Court’s mandate, substituted party Carol Lowe, Personal

Representative of the Estate of Vincent Lowe (“the Estate of Vincent Lowe”), and Defendants

each filed suggestions with the trial court regarding how the court should comply with this

Court’s opinion and mandate in Lowe I. Additionally, the Estate of Vincent Lowe and

Defendants each submitted a proposed judgment.

 All the parties agreed in their proposed judgments that, on remand, and consistent with

Lowe I’s opinion, Lowe I’s mandate, and the jury’s November 3, 2017 damages verdict and

comparative fault assessments, the Estate of Vincent Lowe was entitled to immediate lump sum

payments totaling $2,470,990.51 for past economic and past non-economic damages and

$900,000.00 for future non-economic damages, i.e., a complete total of $3,370,990.51 in

immediate lump sum payments. The parties also agreed in their proposed judgments that, in

light of Mr. Lowe’s death between the time Lowe I was issued and mandated, the Estate of

Vincent Lowe was not entitled on remand to any medical damages relating to the jury’s

November 3, 2017 future medical damages award for the payment years beginning after Mr.

 9
Lowe’s October 23, 2019 death (characterized in the trial court’s initial judgment as years three

through twenty-six). 8

 However, the parties’ disagreed in their proposed judgments whether, in light of Mr.

Lowe’s death between the time Lowe I was issued and mandated, the trial court had the authority

on remand to enter a judgment against Defendants awarding damages pertaining to attorney’s

fees and litigation expenses. While Defendants’ proposed judgment did not include any award

of damages pertaining to attorney’s fees or litigation expenses, the Estate of Vincent Lowe’s

proposed judgment included an award of damages pertaining to attorney’s fees in the amount of

$5,128,396.00 and an award of damages pertaining to litigation expenses in the amount of

$86,934.40.

 The parties’ proposed judgments also differed regarding the extent of the trial court’s

authority to award medical damages, relating to the jury’s November 3, 2017 future medical

damages award, for the time frame Mr. Lowe lived following the jury’s November 3, 2017

verdict and prior to his October 23, 2019 death (characterized in the trial court’s initial judgment

as payment years one and two, with payments due on November 3, 2017 and November 3, 2018,

respectively). See footnote 8 of this opinion. Defendants’ proposed judgment alleged the trial

court should apply section 538.220.5 9 and only award an amount of medical damages to the

8
 As previously indicated, the trial court’s initial judgment found that because Mr. Lowe’s life expectancy was 25.7
years as of the time of the jury’s November 3, 2017 verdict, Mr. Lowe was entitled to payments for future medical
damages for twenty-six years following the verdict, with payment for year one to be paid immediately (with the
payment due on the date of the jury’s November 3, 2017 verdict), and payment for year two to be due on November
3, 2018.
9
 Section 538.220.5, which will be discussed in detail below in Section II.C.2. of this opinion, provides in full that:
 Upon the death of a judgment creditor, the right to receive payments of future damages, other than
 future medical damages, being paid by installments or periodic payments will pass in accordance
 with the Missouri probate code unless otherwise transferred or alienated prior to death. Payment of
 future medical damages will continue to the estate of the judgment creditor only for as long as
 necessary to enable the estate to satisfy medical expenses of the judgment creditor that were due
 and owing at the time of death, which resulted directly from the injury for which damages were
 awarded, and do not exceed the dollar amount of the total payments for such future medical damages
 outstanding at the time of death.
 10
Estate of Vincent Lowe which would satisfy any medical expenses of Mr. Lowe that were due

and owing at the time of his death and which resulted directly from Defendants’ alleged

negligence. 10 In contrast, the Estate of Vincent Lowe’s proposed judgment alleged the trial court

should award an amount of medical damages to the Estate of Vincent Lowe in the amount of

$988,134.76 for Mr. Lowe’s immediate medical damages following the jury’s November 3, 2017

verdict and in the amount of $347,655.91 for the second year of Mr. Lowe’s life following the

verdict and prior to his death.

 The trial court entered its initial judgment after mandate on March 23, 2020 (“March

2020 judgment”). Subsequently, Defendants filed motions to amend the March 2020 judgment.

Additionally, the Estate of Vincent Lowe filed a proposed amended judgment which suggested,

inter alia, $133,383.95 to be paid to the Estate of Vincent Lowe for the second year of Mr.

Lowe’s life following the jury’s November 3, 2017 verdict and prior to his death.

 On July 1, 2020, the trial court entered the July 2020 amended judgment at issue in this

appeal awarding the Estate of Vincent Lowe a total of $9,707,839.62 in damages (consisting of a

total of $5,215,330.40 in damages pertaining to attorney’s fees and litigation expenses and a total

of $4,492,509.22 in past economic damages, past non-economic damages, future non-economic

damages, and medical damages). The total of $9,707,839.62 in damages specifically consists of

$5,128,396.00 in damages pertaining to attorney’s fees; $86,934.40 in damages pertaining to

litigation expenses; $1,570,990.51 in past economic damages; $900,000 in past non-economic

damages; $900,000 in future non-economic damages; and a total of $1,121,518.71 in medical

damages.

10
 In addition, Defendants Mercy Hospitals and Dr. Menges sought to conduct discovery on the amount of Mr.
Lowe’s medical expenses that were due and owing at the time of his death and which resulted directly from
Defendants’ alleged negligence.
 11
 The total of $1,121,518.71 in medical damages relates to the jury’s November 3, 2017

future medical damages award, for the time frame Mr. Lowe lived following the jury’s

November 3, 2017 verdict and prior to his October 23, 2019 death. With respect to the trial

court’s award of a total of $1,121,518.71 in medical damages, the court’s July 2020 amended

judgment found and explained in relevant part that:

 . . . The evidence at trial showed that [underlying] [p]laintiff[ ] [Mr. Lowe’s] life
 expectancy was 25.7 years. But for [Mr.] Lowe’s death, the [c]ourt . . . would
 exercise its discretion and enter a [j]udgment for: . . . $988,134.76 for [Mr.] Lowe’s
 immediate medical damages . . . and . . . $131,438.66 (plus interest each year at
 1.48%, not calculated at this time) per year for 24.7 years . . .. However, the [c]ourt
 shall not enter a judgment as set forth in this paragraph due to the death of
 [underlying] [p]laintiff [Mr.] Lowe . …

 ...

 The [c]ourt exercise[s] its discretion to award immediate medical damages
 [following the jury’s November 3, 2017 verdict], and Defendants are required to
 immediately pay $988,134.76 for [Mr.] Lowe’s immediate medical damages to the
 Estate of Vincent Lowe.

 Defendants are required to immediately pay $133,383.95 for ‘Year 2’ of [Mr.]
 Lowe’s medical damages to the Estate of Vincent Lowe.

 ...

 [ ] ‘Year 2’ of [Mr.] Lowe’s medical damages account for the medical damages for
 the 2nd year of his life following the verdict and prior to his death. ‘Year 2’ medical
 damages were calculated by subtracting $988,134.76 from the total [net] future
 medical damages award [of $9,450,000.00] to obtain $8,461,865.24 in remaining
 future [medical] damages. In addition, the sum of $5,128,396.00 and $86,934.40
 (attorney fees and litigation expenses deducted from the future medical [damages])
 are also deduc[t]ed. That number ([$]3,246,534[.]84) was divided by 24.7
 remaining years of [Mr.] Lowe’s life to obtain $131,438.66 per year in future
 medical damages. The [c]ourt previously determined that pursuant to . . . [section]
 538.220.2, the future medical payments would be increased at an annual rate of
 1.48% which was the average accepted auction price for the last auction of 52-week
 United States Treasury Bills settled immediately prior to the date of the judgment,
 November 3, 2017. That interest rate total for 1 year ($1,945.29) was added to
 obtain a total of $133,383.95 for ‘Year 2’ of [Mr.] Lowe’s life.

(emphasis in original).

 12
 Following entry of the trial court’s July 2020 amended judgment, Defendants timely filed

motions to amend the judgment or for a new trial on July 10, 2020 and July 31, 2020,

challenging the portions of the July 2020 amended judgment awarding the Estate of Vincent

damages pertaining to attorney’s fees, damages pertaining to litigation expenses, and medical

damages. The trial court did not rule on Defendants’ motions and, as a result, they were deemed

denied by operation of Missouri Supreme Court Rule 81.05(a)(2)(A) (2020) 11 on October 29,

2020. See Rule 81.05(a)(2)(A). Defendants now appeal portions of the July 2020 amended

judgment awarding the Estate of Vincent Lowe a total of $5,215,330.40 in damages pertaining to

attorney’s fees and litigation expenses and a total of $1,121,518.71 in medical damages.

 II. DISCUSSION

 Defendants Mercy Hospitals and Dr. Menges (“the Menges Defendants”) raise a total of

seven points on appeal, and Defendants Mercy Clinic and Dr. Cassat (“the Cassat Defendants”)

raise a total of two points on appeal. In the Menges Defendants’ first, second, and seventh points

on appeal, and in the Cassat Defendants’ first point on appeal, Defendants assert the trial court’s

July 2020 amended judgment is erroneous to the extent it awards the Estate of Vincent Lowe

a total of $5,215,330.40 in damages pertaining to attorney’s fees and litigation expenses. In the

Menges Defendants’ third through sixth points on appeal and in the Cassat Defendants’ second

point on appeal, Defendants contend the trial court’s July 2020 amended judgment is erroneous

to the extent it awards the Estate of Vincent Lowe a total of $1,121,518.71 in medical damages.

A. The Primary Issues Raised in this Appeal, Applicable Standards of Review, and
 General Law
 The primary issues raised in this appeal are whether the trial court followed our Court’s

mandate in Lowe I when, on remand, the court entered the portions of its July 2020 amended

11
 All further references to Rule 81.05(a)(2)(A) are to Missouri Supreme Court Rules (2020).
 13
judgment awarding the Estate of Vincent Lowe a total of $5,215,330.40 in damages pertaining to

attorney’s fees and litigation expenses and a total of $1,121,518.71 in medical damages. Where,

as in this case, there is an appeal from a trial court’s decision after an appellate court’s initial

mandate and opinion in the same cause, “a correct result will not be set aside even if a trial court

gave a wrong or insufficient reason for its judgment.” See Ironite Products Co., Inc. v. Samuels,

17 S.W.3d 566, 568-70, 571 n.3 (Mo. App. E.D. 2000); see also Lancaster v. Simmons, 621

S.W.2d 935, 937-39, 942 (Mo. App. W.D. 1981) (similarly holding).

 Moreover, whether a trial court follows a mandate on remand is a question that our Court

reviews de novo. Barden v. Barden, 546 S.W.3d 582, 594 (Mo. App. E.D. 2018). “On remand,

the scope of the trial court’s authority is defined by the appellate court’s mandate.” Id.; see also

Bryant v. Bryant, 351 S.W.3d 681, 687 (Mo. App. E.D. 2011) (similarly holding). “The mandate

serves the purpose of communicating the judgment to the [trial] court, and the opinion, which is

a part thereof, serves an interpretive function.” Bryant, 351 S.W.3d at 687 (citations omitted).

Accordingly, in determining a trial court’s authority on remand, the mandate should not be read

in a vacuum; instead, “the trial court should be guided by the mandate [ ] [and] also by the

opinion and result contemplated by the appellate court.” Id.

 There are two types of remands: (1) a general remand, which does not provide any

specific directions to the trial court and leaves all issues open to consideration in the new trial;

and (2) a remand with directions, which requires the trial court to enter a judgment in conformity

with the appellate court’s mandate and the accompanying opinion. 12 See Barden, 546 S.W.3d at

594; Bryant, 351 S.W.3d at 687. “Where the mandate [and accompanying opinion] contain[ ]

express instructions that direct the trial court to take a specified action, the trial court has no

12
 As stated below, it is undisputed on appeal that the remand in Lowe I’s mandate and opinion is the second type of
remand – a remand with directions – which required the trial court to enter a judgment in conformity with our
Court’s mandate and accompanying opinion in Lowe I. See Barden, 546 S.W.3d at 594; Bryant, 351 S.W.3d at 687.
 14
authority to deviate from those instructions.” See Barden, 546 S.W.3d at 594 (citation omitted);

see also Bryant, 351 S.W.3d at 687. Moreover, if a trial court takes an action which is contrary

to the directions of the mandate and accompanying opinion, the action is unauthorized and is

considered null and void. See id.

 The remand instructions in an appellate court mandate and accompanying opinion “fall

within the rule that an appellate decision is the law of the case in subsequent proceedings in the

same cause.” Krysl v. Treasurer of Missouri, 615 S.W.3d 843, 850 (Mo. App. E.D. 2020). The

doctrine of the law of the case precludes re-litigation of issues on remand and in a subsequent

appeal. State v. Deck, 303 S.W.3d 527, 545, 545 n.2 (Mo. banc 2010). This rule applies to

issues decided by the appellate court, either directly or by implication, as well as to matters that

arose prior to the first appeal and might have been raised but were not. Id.; Cranor v. Cranor,

118 S.W.3d 222, 225 (Mo. App. S.D. 2003). “The law of the case doctrine is important because

it protects the parties’ expectations and promotes uniformity of decisions and judicial economy.”

Walton v. City of Berkeley, 223 S.W.3d 126, 131 (Mo. banc 2007).

 “Although the law of the case doctrine is not absolute . . . the court’s discretion to

disregard it is exercised only in rare and compelling situations” such as “where there is a

mistake, a manifest injustice, an intervening change of the law, . . . or where the issues or

evidence on remand are substantially different from those vital to the first adjudication and

judgment.” Jenkins v. Jenkins, 406 S.W.3d 919, 924, 925 (Mo. App. W.D. 2013) (citations,

internal citations, and internal quotations omitted); see also Krysl, 615 S.W.3d at 850 (where, in

a second appellate decision in the same cause, this Court exercised its discretion and refused to

apply the law of the case doctrine with respect to an issue decided in the first appellate decision

because it “was incorrectly decided out of inadvertence arising from inadequate briefing” and

because adherence to the first appellate decision would cause a manifest justice).

 15
B. Whether the Portion of the Trial Court’s July 2020 Amended Judgment Awarding
 the Estate of Vincent Lowe Damages Pertaining to Attorney’s Fees and Litigation
 Expenses is Erroneous
 We first address Defendants’ contentions – in the Menges Defendants’ first, second, and

seventh points on appeal, and in the Cassat Defendants’ first point on appeal – that the portion of

the trial court’s July 2020 amended judgment awarding the Estate of Vincent Lowe a total of

$5,215,330.40 in damages pertaining to attorney’s fees and litigation expenses ($5,128,396.00

and $86,934.40, respectively) is erroneous.

 1. The Award of Damages Pertaining to Attorney’s Fees

 In this case, Defendants assert the portion of the trial court’s July 2020 amended

judgment awarding the Estate of Vincent Lowe $5,128,396.00 in damages pertaining to

attorney’s fees is erroneous because, (a) it is not in conformity with this Court’s mandate and

opinion in Lowe I; and (b) it violates the American Rule. For the reasons discussed below, we

disagree.

 a. Whether the Award of Damages Pertaining to Attorney’s Fees is in
 Conformity with this Court’s Mandate and Opinion in Lowe I

 In this case, it is undisputed on appeal that the remand in Lowe I’s mandate and opinion is

the second type of remand discussed above in Section II.A. of this opinion – a remand with

directions – which required the trial court to enter a judgment in conformity with our Court’s

mandate and opinion in Lowe I. See Barden, 546 S.W.3d at 594; Bryant, 351 S.W.3d at 687.

 Our Court’s mandate in Lowe I provides in relevant part:

 Th[is] Court, being sufficiently advised of and having considered the premises,
 adjudges that [the trial court’s initial] judgment rendered by the Franklin County
 Circuit Court in cause No. 16AB-CC00047 be reversed in part as to the award of
 damages pertaining to attorneys’ fees and to the periodic payment of future
 damages and the cause [be] remanded to the aforesaid court for further
 proceedings in accordance with the Court’s opinion and be affirmed in all other
 respects in accordance with this Court’s opinion [in Lowe I issued on] October 1,
 2019 . . ..

 16
(emphasis added).

 Similarly, this Court’s opinion in Lowe I reversed the trial court’s initial judgment

awarding damages only to the limited extent that, (1) the trial court erred in its calculation of the

amounts of periodic future medical damages payments because the periodic payments ordered by

the court were in varying, unequal amounts, and (2) the trial court, in violation of section

538.220.4, 13 erred in failing to award underlying plaintiff Mr. Lowe an “immediate payment of a

lump sum [of damages] sufficient to cover” “his attorney’s fees which amounted to

$5,128,396[.00],” pursuant to a contingency fee agreement entitling Mr. Lowe’s attorneys to

“40% of net to Plaintiff[,]” i.e., 40% of the jury’s November 3, 2017 “net [damages] verdict of

$12,820,990[.51].” Lowe I, 592 S.W.3d at 16, 17-18, 29-31, 30, 30 n.12, 31, 15-32 (emphasis

added). See footnote 7 of this opinion. The trial court’s initial judgment was affirmed “[i]n all

other respects,” including to the extent the judgment awarded underlying plaintiff Mr. Lowe a

net verdict of $12,820,990.51 in damages. Id. at 17-18, 15-32.

 Importantly, our Court in Lowe I “remanded [the case] for entry of a new judgment in

accordance with th[e] [Lowe I] opinion.” See id. at 17-18. The Lowe I opinion gave the trial

court specific instructions on remand with respect to awarding damages pertaining to attorney’s

fees, holding: “because here the trial court was timely informed that [Mr. Lowe] had a

contingency fee arrangement with his attorneys, the court [is] required to order the immediate

payment of a lump sum [of damages] sufficient to cover [Mr.] Lowe’s attorney’s fees.” Id. at 29

(internal footnote omitted).

13
 See Lowe I, 592 S.W.3d at 29-30 (holding that under section 538.220.4, “it is presumed that, absent the attorney’s
agreement, attorney’s contingent fees will be paid at the time of judgment”) (quoting Vincent by Vincent v. Johnson,
833 S.W.2d 859, 866 (Mo. banc 1992)); see also section 538.220.4 (providing in full that: “If a plaintiff and his
attorney have agreed that attorney’s fees shall be paid from the award, as part of a contingent fee arrangement, it
shall be presumed that the fee will be paid at the time the judgment becomes final. If the attorney elects to receive
part or all of such fees in periodic or installment payments from future damages, the method of payment and all
incidents thereto shall be a matter between such attorney and the plaintiff and not subject to the terms of the
payment of future damages, whether agreed to by the parties or determined by the court”).
 17
 In this case, we hold the above-italicized portions of the mandate and accompanying

opinion in Lowe I contain express instructions that directed the trial court to award

$5,128,396.00 in damages pertaining to attorney’s fees on remand. 14 Accordingly, the trial court

had no authority to deviate from those instructions. See Barden, 546 S.W.3d at 594; see also

Bryant, 351 S.W.3d at 687.

 On appeal, Defendants argue the Lowe I opinion should be read to only allow the Estate

of Vincent Lowe to recover damages pertaining to attorney’s fees consisting of “40 percent of

the total damages collected by [the Estate of Vincent Lowe],” which, according to Defendants

and because of Mr. Lowe’s death on October 23, 2019 after the issuance of the Lowe I opinion,

does not include any percentage of the total of $9,450,000.00 in future medical damages awarded

by the jury on November 3, 2017 and affirmed on appeal in Lowe I. This argument has no merit

for two reasons.

 Most importantly, and as previously stated, we hold the mandate and accompanying

opinion in Lowe I contain express instructions that directed the trial court to award

$5,128,396.00 in damages pertaining to attorney’s fees on remand pursuant to a contingency fee

agreement entitling Mr. Lowe’s attorneys to “40% of net to Plaintiff[,]” i.e., 40% of the jury’s

November 3, 2017 “net [damages] verdict of $12,820,990[.51].” See Lowe I, 592 S.W.3d at 16,

17-18, 29-31, 30, 30 n.12. Therefore, the trial court had no authority to deviate from those

instructions. See Barden, 546 S.W.3d at 594; see also Bryant, 351 S.W.3d at 687.

 Second, if we were to agree with Defendants’ reasoning that the Estate of Vincent Lowe

is only to recover damages pertaining to attorney’s fees consisting of “40 percent of the total

14
 Although the Menges Defendants argue in this appeal that the mandate and accompanying opinion in Lowe I did
not direct the trial court to award $5,128,396.00 in damages pertaining to attorney’s fees on remand, we note they
took an opposite position in their December 19, 2019 application for transfer filed in the Missouri Supreme Court
following the issuance of this Court’s opinion in Lowe I, where they argued: “Given the specific remand ordered by
the Court of Appeals in [Lowe I], the trial court will have no choice but to enter a new judgment awarding a lump
sum payment sufficient to cover $5,128,396[.00] in Mr. Lowe’s attorney’s fees.”
 18
damages collected by [the Estate of Vincent Lowe],” this would have the effect of ultimately

denying Mr. Lowe’s attorneys compensation that the attorneys are entitled to via a private

contract with their client merely because Mr. Lowe passed away after this Court’s issuance of

Lowe I. We can find no controlling legal authority to support such a result and instead hold that

pursuant to the contingency fee agreement between underlying plaintiff Mr. Lowe and his

attorneys, Mr. Lowe’s attorneys are entitled to 40% of the jury’s net verdict of $12,820,990.51

for Mr. Lowe, an amount that was affirmed on appeal in Lowe I. See Lowe I, 592 S.W.3d at 15-

32; Long v. Missouri Delta Medical Center, 33 S.W.3d 629, 633, 638, 645-46 (Mo. App. S.D.

2000) (rejecting an argument of a defendant-medical center, similar to Defendants’ argument

here, asserting that paying a lump sum of damages pertaining to attorney’s fees creates an unjust

result because the fees could be paid based on future damages awards that would never be

received “if [the underlying injured party] were to die soon after entry of the judgment”) 15;

Kramer v. Fallert, 628 S.W.2d 671, 674 (Mo. App. E.D. 1981) (holding “the ‘net amount

recovered’ in a contingent fee contract entitles the attorney to the stated percentage of the

amount of the verdict for his client which remains after reduction by the amount of any

counterclaim or offset, unless otherwise expressed”); see also Grasch v. Grasch, 536 S.W.3d

191, 194 (Ky. 2017) (holding an attorney possesses “a vested right to the actual contingent fee

itself” when “the case is won or settled”); Musser v. Musser, 909 P.2d 37, 38 n.1 (Okla. 1995)

(defining a contingency fee contract in relevant part as “one that provides that a fee is to be paid

to the attorney for his services . . . [where] he wins”) (quoting Pocius v. Halvorsen, 195 N.E.2d

137, 139 (Ill. 1963)).

15
 We note Long, 33 S.W.3d 629 was abrogated in part on other grounds by State Bd. of Registration for Healing
Arts v. McDonagh, 123 S.W.3d 146, 153, 153 n.9 (Mo. banc 2003).
 19
 Based on the foregoing, we hold the portion of the trial court’s July 2020 amended

judgment awarding the Estate of Vincent Lowe $5,128,396.00 in damages pertaining to

attorney’s fees is in conformity with this Court’s mandate and opinion in Lowe I. We also hold

the facts and procedural posture of this case do not constitute a “rare and compelling situation[ ]”

which would justify our Court to exercise our discretion and disregard the rule that an appellate

decision is the law of the case in subsequent proceedings in the same cause. See Jenkins, 406

S.W.3d at 925; see also Krysl, 615 S.W.3d at 850.

 b. Whether the Award of Damages Pertaining to Attorney’s Fees
 Violates the American Rule

 We next address Defendants’ argument that the portion of the trial court’s July 2020

amended judgment awarding the Estate of Vincent Lowe $5,128,396.00 in damages pertaining to

attorney’s fees is erroneous because it violates the American Rule.

 “Missouri courts typically follow the ‘American [R]ule’ with regard to awards of

attorney’s fees and costs[,] which provides that each litigant should bear his or her own

[attorney’s fees] [and] litigation expenses.” In re Marriage of Geske, 421 S.W.3d 490, 496 (Mo.

App. S.D. 2013) (emphasis added) (quoting Cohen v. Cohen, 73 S.W.3d 39, 55 (Mo App. W.D.

2002)); see also Arrowhead Lake Estates Homeowners Association, Inc. v. Aggarwal, 624

S.W.3d 165, 167 (Mo. banc 2021) (holding the American Rule generally applies “with few

exceptions” and “in the absence of statutory authorization or contractual agreement”) (citation

omitted).

 In this case, the trial court’s July 2020 amended judgment does not contain a separate

award of attorney’s fees; instead, the amended judgment awards the Estate of Vincent Lowe

$5,128,396.00 in damages pertaining to attorney’s fees, a damages award which is authorized by

section 538.220.4 and is required by this Court’s mandate and opinion in Lowe I. See Lowe I,

 20
592 S.W.3d at 16, 17-18, 29-31, 30 n.12; see also section 538.220.4; Vincent by Vincent, 833

S.W.2d at 866.

 Defendants argue on appeal that the exact language used in the trial court’s July 2020

amended judgment does not support the conclusion that the attorney’s fees portion of the trial

court’s judgment is a damages award rather than a separate attorney’s fees award. This argument

has no merit because, (1) we find the entire trial court’s July 2020 amended judgment, read in

conjunction with the mandate and opinion in Lowe I, supports the conclusion that the attorney’s

fees portion of the trial court’s July 2020 amended judgment is a damages award pertaining to

attorney’s fees; and (2) we hold the attorney’s fees portion of the trial court’s July 2020 amended

judgment is correct because, inter alia, it is in conformity with Lowe I’s mandate and opinion as

previously discussed in detail in Section II.B.1.a. of this opinion. See Ironite Products Co., Inc.,

17 S.W.3d at 568-70, 571 n.3 (where, as in this case, there is an appeal from a trial court’s

decision after an appellate court’s initial mandate and opinion in the same cause, “a correct result

will not be set aside even if a trial court gave a wrong or insufficient reason for its judgment”);

see also Lancaster, 621 S.W.2d at 937-39, 942 (similarly holding).

 Because the trial court’s July 2020 amended judgment does not contain a separate award

of attorney’s fees but instead awards the Estate of Vincent Lowe $5,128,396.00 in damages

pertaining to attorney’s fees, this portion of the July 2020 amended judgment does not violate the

American Rule. See In re Marriage of Geske, 421 S.W.3d at 496; Cohen, 73 S.W.3d at 55.

 2. The Award of Damages Pertaining to Litigation Expenses

 As previously stated, it is undisputed on appeal that the remand in Lowe I’s mandate and

opinion is a remand with directions, which required the trial court to enter a judgment in

conformity with our Court’s opinion and mandate in Lowe I. See Barden, 546 S.W.3d at 594;

Bryant, 351 S.W.3d at 687.

 21
 Our Court’s mandate in Lowe I provides in relevant part:
 Th[is] Court, being sufficiently advised of and having considered the premises,
 adjudges that [the trial court’s initial] judgment rendered by the Franklin County
 Circuit Court in cause No. 16AB-CC00047 be reversed in part as to the award of
 damages pertaining to attorneys’ fees and to the periodic payment of future
 damages and the cause [be] remanded to the aforesaid court for further
 proceedings in accordance with the Court’s opinion and be affirmed in all other
 respects in accordance with this Court’s opinion [in Lowe I issued on] October 1,
 2019 . . ..

(emphasis added). The Lowe I opinion similarly “remanded [the case] for entry of a new

judgment in accordance with th[e] [ ] opinion.” See 592 S.W.3d at 17-18.

 The Lowe I opinion gave the trial court specific instructions on remand with respect to

awarding damages pertaining to litigation expenses, explicitly holding the trial court has

discretion to “fix a lump sum [damages award] amount sufficient . . . to cover [Mr.] Lowe’s . . .

expenses.” Id. at 31 (emphasis added). We find this language in Lowe I provided the trial court

with the authority to award damages pertaining to litigation expenses on remand. Moreover, the

figure of $86,934.40 was advanced by underlying plaintiff Mr. Lowe multiple times in the

underlying trial proceedings which occurred prior to Lowe I, and prior to Lowe I, neither the

Menges Defendants nor the Cassat Defendants challenged the $86,934.40 figure on the grounds

it was an unreasonable amount or that it was unsupported by the evidence. Under these

circumstances, we hold the portion of the trial court’s July 2020 amended judgment awarding the

Estate of Vincent Lowe $86,934.40 in damages pertaining to litigation expenses is in conformity

with this Court’s mandate and opinion in Lowe I and is not otherwise erroneous. 16 We also hold

the facts and procedural posture of this case do not constitute a “rare and compelling situation[ ]”

which would justify our Court to exercise our discretion and disregard the rule that an appellate

16
 To the extent Defendants argue the portion of the trial court’s July 2020 amended judgment awarding damages
pertaining to litigation expenses violates the American Rule, we find this argument has no merit pursuant to our
reasoning in Section II.B.1.b. of this opinion, where we find no merit to Defendants’ argument that the portion of the
trial court’s July 2020 amended judgment awarding damages pertaining to attorney’s fees violates the American
Rule.
 22
decision is the law of the case in subsequent proceedings in the same cause. See Jenkins, 406

S.W.3d at 925; see also Krysl, 615 S.W.3d at 850.

 3. The Menges Defendants’ Final Argument Concerning the Award of Damages
 Pertaining to Attorney’s Fees and Litigation Expenses and our Conclusion as
 to this Portion of the Trial Court’s July 2020 Amended Judgment

 In their final argument concerning the portions of the trial court’s July 2020 amended

judgment awarding the Estate of Vincent Lowe damages pertaining to attorney’s fees and

litigation expenses, the Menges Defendants assert these damage awards “violate[ ] the due

process clause[s] of the Missouri and United States Constitutions” essentially because, (1) the

awards relate to the jury’s net verdict in favor of Mr. Lowe in the amount of $12,820,990.51 in

damages including $9,450,000.00 in future medical damages; and (2) Mr. Lowe would not

collect the full $9,450,000.00 in future medical damages since he died between the time Lowe I

was issued and mandated. 17 The Menges Defendants have failed to cite to any controlling legal

authority in support of this argument, and we can find no such legal authority. Accordingly, it

has no merit.

 Because we find no merit to Defendants’ arguments on appeal challenging the portions of

the trial court’s July 2020 amended judgment awarding the Estate of Vincent Lowe damages

pertaining to attorney’s fees and litigation expenses, the Menges Defendants’ first, second, and

seventh points on appeal are denied, and the Cassat Defendants’ first point on appeal is denied.

17
 The Menges Defendants also argue the portions of the trial court’s July 2020 amended judgment awarding the
Estate of Vincent Lowe damages pertaining to attorney’s fees and litigation expenses violate due process because
the portion of the trial court’s July 2020 amended judgment awarding the Estate of Vincent Lowe a total of
$1,121,518.71 in medical damages “did not comply with section 538.220.5.” This argument has no merit pursuant
to Section II.C.2. of this opinion set out below, where we hold that the portion of the trial court’s July 2020 amended
judgment awarding the Estate of Vincent Lowe a total of $1,121,518.71 in medical damages complies with section
538.220.5.
 23
C. Whether the Portion of the Trial Court’s July 2020 Amended Judgment Awarding
 the Estate of Vincent Lowe a Total of $1,121,518.71 in Medical Damages is
 Erroneous

 We next address Defendants’ contentions – in the Menges Defendants’ third through

sixth points on appeal and in the Cassat Defendants’ second point on appeal – that the portion of

the trial court’s July 2020 amended judgment is erroneous to the extent it awards the Estate of

Vincent Lowe a total of $1,121,518.71 in medical damages, relating to the jury’s November 3,

2017 future medical damages award, for the time frame Mr. Lowe lived following the jury’s

November 3, 2017 verdict and prior to his October 23, 2019 death. Defendants assert this

portion of the judgment is erroneous primarily because, (1) it is not in conformity with this

Court’s mandate and opinion in Lowe I; and (2) it violates section 538.220.5. For the reasons

discussed below, we disagree.

 1. Whether the Total Award of Medical Damages is in Conformity with this
 Court’s Mandate and Opinion in Lowe I

 As previously stated, it is undisputed on appeal that the remand in Lowe I’s mandate and

opinion is a remand with directions, which required the trial court to enter a judgment in

conformity with our Court’s mandate and opinion in Lowe I. See Barden, 546 S.W.3d at 594;

Bryant, 351 S.W.3d at 687.

 On remand after this Court’s opinion and mandate in Lowe I, the trial court’s July 2020

amended judgment awarded the Estate of Vincent Lowe a total of $1,121,518.71 in medical

damages, relating to the jury’s November 3, 2017 future medical damages award, for the time

frame Mr. Lowe lived following the jury’s November 3, 2017 verdict and prior to his October

23, 2019 death. The total of $1,121,518.71 in medical damages consists of, (a) an award of

$988,134.76 for Mr. Lowe’s immediate medical damages following the jury’s November 3, 2017

verdict; and (b) an award of $133,383.95 for “Year 2” of Mr. Lowe’s medical damages. For the

 24
reasons discussed below, we hold each of these awards is in conformity with this Court’s

mandate and opinion in Lowe I.

 a. The Award of $988,134.76 for Mr. Lowe’s Immediate Medical
 Damages Following the Jury’s November 3, 2017 Verdict

 The trial court’s July 2020 amended judgment found: “The [c]ourt exercise[s] its

discretion to award immediate medical damages [following the jury’s November 3, 2017

verdict], and Defendants are required to immediately pay $988,134.76 for [Mr.] Lowe’s

immediate medical damages to the Estate of Vincent Lowe.”

 We hold this portion of the trial court’s judgment is in conformity with this Court’s

mandate and opinion in Lowe I because the mandate and opinion both explicitly remanded the

cause for further proceedings in accordance with the Lowe I opinion; the Lowe I opinion

affirmed the trial court’s initial judgment to the extent it awarded underlying plaintiff Mr. Lowe

a net verdict of $12,820,990.51 in damages including a total of $9,450,000.00 in future medical

damages to be paid beginning on the date of the jury’s November 3, 2017 verdict; the Lowe I

opinion affirmed the trial court’s initial judgment to the extent it found the first payment of Mr.

Lowe’s future medical damages was due on November 3, 2017; the Lowe I opinion held the trial

court has “authority [, on remand,] to determine what part of the future medical damages shall be

subject to the [periodic] payment schedule”; and the Lowe I opinion held the trial court “ha[s]

discretion . . . on remand, to order a larger or smaller immediate lump sum payment [than the

$988,134.76 immediate lump sum payment the trial court ordered in its initial judgment] to

account for [Mr.] Lowe’s particular medical needs with the remainder of the future damages to

be paid out periodically in the future.” See Lowe I, 592 S.W.3d at 17-18, 29, 15-32 (citing and

partially quoting Watts, 376 S.W.3d at 647).

 In conformity with Lowe I’s mandate and opinion, the trial court’s July 2020 amended

judgment reflects the trial court exercised its authority and discretion to determine that
 25
$988,134.76 of the future medical damages awarded by the jury should not be subject to the

periodic payment schedule, but instead should be the same immediate lump sum payment as was

ordered by the trial court’s initial judgment to account for Mr. Lowe’s particular medical needs

for the first payment year following his death. Moreover, in conformity Lowe I’s mandate and

opinion affirming the portion of the trial court’s initial judgment finding the first payment of Mr.

Lowe’s future medical damages was due on November 3, 2017, the trial court’s July 2020

amended judgment ordered the $988,134.76 medical damages payment to be paid immediately,

which is correct because this portion of the jury’s future medical damages award was past due.

 b. The Award of $133,383.95 for “Year 2” of Mr. Lowe’s Medical
 Damages
 The trial court’s July 2020 amended judgment found in relevant part:

 . . . The evidence at trial showed that [underlying] [p]laintiff[ ] [Mr. Lowe’s] life
 expectancy was 25.7 years. But for [Mr.] Lowe’s death, the [c]ourt . . . would
 exercise its discretion and enter a [j]udgment for: . . . $988,134.76 for [Mr.] Lowe’s
 immediate medical damages . . . and . . . $131,438.66 (plus interest each year at
 1.48%, not calculated at this time) per year for 24.7 years . . .. However, the [c]ourt
 shall not enter a judgment as set forth in this paragraph due to the death of
 [underlying] [p]laintiff [Mr.] Lowe . …

 ...

 Defendants are required to immediately pay $133,383.95 for ‘Year 2’ of [Mr.]
 Lowe’s medical damages to the Estate of Vincent Lowe.

 ...

 [ ] ‘Year 2’ of [Mr.] Lowe’s medical damages account for the medical damages for
 the 2nd year of his life following the verdict and prior to his death. ‘Year 2’ medical
 damages were calculated by subtracting $988,134.76 from the total [net] future
 medical damages award [of $9,450,000.00] to obtain $8,461,865.24 in remaining
 future [medical] damages. In addition, the sum of $5,128,396.00 and $86,934.40
 (attorney fees and litigation expenses deducted from the future medical [damages])
 are also deduc[t]ed. That number ([$]3,246,534[.]84) was divided by 24.7
 remaining years of [Mr.] Lowe’s life to obtain $131,438.66 per year in future
 medical damages. The [c]ourt previously determined that pursuant to . . . [section]
 538.220.2, the future medical payments would be increased at an annual rate of
 1.48% which was the average accepted auction price for the last auction of 52-week
 United States Treasury Bills settled immediately prior to the date of the judgment,
 26
 November 3, 2017. That interest rate total for 1 year ($1,945.29) was added to
 obtain a total of $133,383.95 for ‘Year 2’ of [Mr.] Lowe’s life.

(emphasis in original).

 We hold this portion of the trial court’s judgment is in conformity with this Court’s

mandate and opinion in Lowe I because the mandate and opinion both explicitly remanded the

cause for further proceedings in accordance with the Lowe I opinion; the Lowe I opinion held the

trial court has “authority [, on remand,] to determine what part of the future medical damages

shall be subject to the [periodic] payment schedule”; the Lowe I opinion held that “once the

[trial] court [, on remand,] determine[s] how much of [Mr.] Lowe’s future damages [are] paid out

in future periodic payments, under [section] 538.220.2 those payments [are] required to be

equal”; the Lowe I opinion affirmed the initial judgment to the extent it awarded the future

medical damages to be paid pursuant to a periodic payment schedule based on the trial court’s

finding that Mr. Lowe’s life expectancy was 25.7 years, a calculation that began on the date of

jury’s November 3, 2017 verdict; the Lowe I opinion affirmed the initial judgment to the extent it

found the second payment of Mr. Lowe’s future medical damages payments was due on

November 3, 2018; and the Lowe I opinion affirmed the initial judgment to the extent it found all

future damages payments are subject to the fixed interest rate of 1.48 percent derived from

section 538.220.2. See Lowe I, 592 S.W.3d at 17-18, 29, 15-32 (citing and partially quoting

Watts, 376 S.W.3d at 647).

 In conformity with Lowe I’s mandate and opinion, the trial court’s July 2020 amended

judgment reflects the trial court exercised its authority to determine that, except for the

$988,134.76 immediate lump sum payment of medical damages to account for Mr. Lowe’s

particular medical needs for the first payment year following his death, the remaining

$8,461,865.24 in net future medical damages awarded by the jury (minus the awards of damages

pertaining to attorney’s fees and litigation expenses), i.e., $3,246,534.84 in future medical
 27
damages, should be subject to the periodic payment schedule. Accordingly, the July 2020

amended judgment properly discusses the judgment the trial court would have entered on remand

if Mr. Lowe had not died – a judgment ordering equal payments of $131,438.66 (plus interest

each year at 1.48%) per year for 24.7 years based on Mr. Lowe’s remaining life expectancy

calculated as of November 3, 2018.

 However, because of Mr. Lowe’s death and consistent with provisions in section

538.220.5, 18 the trial court’s July 2020 amended judgment only ordered the periodic payment

due (on November 3, 2018) prior Mr. Lowe’s death (on October 23, 2019) to be made to the

Estate of Vincent Lowe. And in conformity with Lowe I’s mandate and opinion affirming the

initial judgment to the extent it found all future damages payments are subject to the fixed

interest rate of 1.48 percent derived from section 538.220.2 and in conformity with Lowe I’s

mandate and opinion affirming the initial judgment to the extent it found the second payment of

Mr. Lowe’s future medical damages was due on November 3, 2018, the trial court’s July 2020

amended judgment ordered Defendants to pay $133,383.95 ($131,438.66 plus 1.48% interest for

one year in the amount of $1,945.29) in medical damages for the second year of Mr. Lowe’s life

following the verdict and prior to his death to be paid immediately. Finally, the immediate

payment of this periodic payment was correct because this portion of the jury’s future medical

damages award was past due.

 c. Conclusion as to Whether the Total Award of Medical Damages is in
 Conformity with this Court’s Mandate and Opinion in Lowe I

 Based on the foregoing, we hold the portion of the July 2020 amended judgment

awarding the Estate of Vincent Lowe a total of $1,121,518.71 in medical damages is in

18
 See Section II.C.2. of this opinion, where we hold section 538.220.5 provides that after the death of a judgment
creditor, the estate of the judgment creditor has a right to, inter alia, past due future medical damages payments
under circumstances where a jury’s future medical damages award was upheld and such payments were due prior to
the judgment creditor’s death.
 28
conformity with this Court’s mandate and opinion in Lowe I. We also hold the facts and

procedural posture of this case do not constitute a “rare and compelling situation[ ]” which

would justify our Court to exercise our discretion and disregard the rule that an appellate

decision is the law of the case in subsequent proceedings in the same cause. See Jenkins, 406

S.W.3d at 925; see also Krysl, 615 S.W.3d at 850.

 2. Whether the Total Award of Medical Damages Violates Section 538.220.5

 We now turn to Defendants’ argument on appeal asserting the portion of the trial court’s

July 2020 amended judgment awarding a total of $1,121,518.71 in medical damages violates

section 538.220.5. In determining this issue, our Court must engage in statutory interpretation,

which is an issue subject to de novo review. Maue v. Fiedler Acres Subdivision, 614 S.W.3d

601, 610 (Mo. App. E.D. 2020). “The primary rule in interpreting a statute is to determine the

intent of the legislature from the language used, to give effect to the intent, and to consider the

words in their plain and ordinary meaning.” Id.

 Two principles of statutory interpretation are relevant to the interpretation of section

538.220.5 in this appeal. See Maue, 614 S.W.3d at 610 (similarly holding with respect to a

different statute). First, our Court must read the statute as a whole and give all words their

meaning. Id. And second, “courts must avoid statutory interpretations that are unjust, absurd, or

unreasonable.” Id. (citation omitted).

 a. Statutory Interpretation of Section 538.220.5 and Defendants’
 Arguments on Appeal

 Section 538.220.5 provides in full that:

 Upon the death of a judgment creditor, the right to receive payments of future
 damages, other than future medical damages, being paid by installments or periodic
 payments will pass in accordance with the Missouri probate code unless otherwise
 transferred or alienated prior to death. Payment of future medical damages will
 continue to the estate of the judgment creditor only for as long as necessary to
 enable the estate to satisfy medical expenses of the judgment creditor that were due
 and owing at the time of death, which resulted directly from the injury for which
 29
 damages were awarded, and do not exceed the dollar amount of the total payments
 for such future medical damages outstanding at the time of death.

(emphasis added).

 Reading section 538.220.5 as a whole, giving all words their meaning, and in particular

giving the words “will continue” their plain and ordinary meaning, the statute presupposes that

payment of future medical damages has already begun or should have begun prior to the

judgment creditor’s death. See section 538.220.5 and section 538.205 RSMo. Cum. Supp.

2018 19 (demonstrating the absence of a statutory definition for “will continue”); Webster’s Third

New International Dictionary 493 (2002) (defining “continue” in relevant part as to “keep up or

maintain” or “to keep going”); S.M.H. v. Schmitt, 618 S.W.3d 531, 534 (Mo. banc 2021) (“[i]n

the absence of a statutory definition, words will be given their plain and ordinary meaning as

derived from the dictionary”) (citation omitted); see also Maue, 614 S.W.3d at 610.

Furthermore, in circumstances where payment of future medical damages has not already begun

prior to the judgment creditor’s death, but such payments should have begun – because a jury’s

future medical damages award was upheld and because payments were due prior to the judgment

creditor’s death – we find our colleagues in the legislature intended for such past due future

medical damages payments to be made to the estate of the judgment creditor after the judgment

creditor’s death. See id. Additionally, we find the legislature intended for the estate of a

judgment creditor to be entitled to “continue[d]” payment of future medical damages after the

judgment creditor’s death “for as long as necessary to enable the estate to satisfy medical

expenses of the judgment creditor that were due and owing at the time of death, which resulted

directly from the injury for which damages were awarded, and do not exceed the dollar amount

of the total payments for such future medical damages outstanding at the time of death.” See id.

19
 All further references to section 538.205 are to RSMo Cum. Supp. 2018, which is the version of the statute in
effect from August 28, 2017 to August 27, 2020.
 30
 In sum, we hold section 538.220.5 provides that after the death of a judgment creditor,

the estate of the judgment creditor has a right to, (1) past due future medical damages payments

under circumstances where a jury’s future medical damages award was upheld and such

payments were due prior to the judgment creditor’s death; and (2) “continue[d]” payment of

future medical damages after the judgment creditor’s death “for as long as necessary to enable

the estate to satisfy medical expenses of the judgment creditor that were due and owing at the

time of death, which resulted directly from the injury for which damages were awarded, and do

not exceed the dollar amount of the total payments for such future medical damages outstanding

at the time of death.” See id.; section 538.205; Webster’s Third New International Dictionary

493 (2002); S.M.H., 618 S.W.3d at 534; see also Maue, 614 S.W.3d at 610.

 Defendants assert section 538.220.5 should be interpreted to mean that after the death of

a judgment creditor such as underlying plaintiff Mr. Lowe and no matter what the factual

circumstances, the only payments for future medical damages that can be made to the estate of

the judgment creditor are those monies “necessary to enable the estate to satisfy medical

expenses of the judgment creditor that were due and owing at the time of death, which resulted

directly from the injury for which damages were awarded, and do not exceed the dollar amount

of the total payments for such future medical damages outstanding at the time of death.” See

section 538.220.5. We disagree with this suggested interpretation for two reasons.

 First, Defendants’ suggested interpretation does not give any meaning to the first portion

of section 538.220.5 which provides in relevant part, “Upon the death of a judgment creditor, . . .

[p]ayment of future medical damages will continue to the estate of the judgment creditor only for

as long as necessary to enable the estate to satisfy medical expenses of the judgment creditor that

were due and owing at the time of death [pursuant to circumstances delineated in the statute].”

(emphasis added). As we previously held, reading section 538.220.5 as a whole, giving all

 31
words their meaning, and in particular giving the words “will continue” their plain and ordinary

meaning, the statute presupposes that payment of future medical damages has already begun or

should have begun prior to the judgment creditor’s death. See sections 538.220.5 and 538.205;

Webster’s Third New International Dictionary 493 (2002); S.M.H., 618 S.W.3d at 534; see also

Maue, 614 S.W.3d at 610.

 Second, Defendants’ suggested interpretation of section 538.220.5 would have the absurd

and unreasonable effect of allowing defendants such as those in this case to have a windfall and

be absolved from all liability for future medical damages after an underlying plaintiff’s death

even though, as in this case, a jury found the defendants liable to an underlying plaintiff for

millions of future medical damages in accordance with the evidence presented at trial and based

on a life expectancy calculation that began on the date of the jury verdict, the jury’s award of

future medical damages was affirmed on appeal, and some of the payments of future medical

damages were due but not paid prior to the underlying plaintiff’s death. 20 “[C]ourts must avoid

statutory interpretations that are unjust, absurd, or unreasonable.” Maue, 614 S.W.3d at 610

(citation omitted).

 b. Analysis

 In this case, the trial court’s July 2020 amended judgment awarded the Estate of Vincent

Lowe a total of $1,121,518.71 in medical damages, relating to the jury’s November 3, 2017

future medical damages award affirmed by Lowe I, for the time frame Mr. Lowe lived following

the jury’s November 3, 2017 verdict and prior to his October 23, 2019 death. The total of

$1,121,518.71 in medical damages consists of an award of $988,134.76 for Mr. Lowe’s

20
 In this case, payments of future medical damages were due but not paid prior to underlying plaintiff’s death
because, inter alia, the trial court’s initial judgment contained miscalculations as to how the jury’s future medical
damages verdict should be paid, because underlying plaintiff Mr. Lowe and Defendants exercised their right to
appeal the trial court’s initial judgment, and because Defendants exercised their right to appeal the trial court’s July
2020 amended judgment.
 32
immediate medical damages following the jury’s November 3, 2017 verdict, and $133,383.95 for

“Year 2” of Mr. Lowe’s medical damages. Both of these payments were due prior to underlying

plaintiff Mr. Lowe’s October 23, 2019 death, with the first payment due on November 3, 2017,

the second payment due on November 3, 2018.

 This portion of the trial court’s judgment did not violate section 538.220.5. As we held

in the previous subsection, section 538.220.5 provides that after the death of a judgment creditor,

the estate of the judgment creditor has a right to, inter alia, past due future medical damages

payments under circumstances where, as here, a jury’s future medical damages award was

upheld and such payments were due prior to the judgment creditor’s death. 21

 3. Conclusion as to the Portion of the Trial Court’s July 2020 Amended
 Judgment Awarding the Estate of Vincent Lowe Medical Damages

 Because we find no merit to Defendants’ arguments on appeal challenging the portion of

the trial court’s July 2020 amended judgment awarding the Estate of Vincent Lowe medical

damages, the Menges Defendants’ third through sixth points on appeal are denied, and the Cassat

Defendants’ second point on appeal is denied.

21
 As we previously held, section 538.220.5 also allows for an estate of a judgment creditor to be entitled to
“continue[d]” payment of future medical damages after the judgment creditor’s death “for as long as necessary to
enable the estate to satisfy medical expenses of the judgment creditor that were due and owing at the time of death,
which resulted directly from the injury for which damages were awarded, and do not exceed the dollar amount of the
total payments for such future medical damages outstanding at the time of death.” See section 538.220.5.
Defendants argue on appeal that they are entitled to an evidentiary hearing and discovery to determine “medical
expenses of [Mr. Lowe] that were due and owing at the time of death [pursuant to circumstances delineated in
section 538.220.5]” and also assert Defendants were deprived of due process because they did not receive an
evidentiary hearing and discovery. We find these arguments have no merit because the trial court did not award the
Estate of Vincent Lowe any payment of future medical damages under this portion of the statute, and the Estate of
Vincent Lowe does not contend in this appeal that she is entitled to any such payment of future medical damages.
 33
 III. CONCLUSION

 The trial court’s July 2020 amended judgment awarding the Estate of Vincent Lowe a

total of $9,707,839.62 in damages (consisting of a total of $5,215,330.40 in damages pertaining

to attorney’s fees and litigation expenses and a total of $4,492,509.22 in past economic damages,

past non-economic damages, future non-economic damages, and medical damages) is affirmed. 22

 ROBERT M. CLAYTON III, Judge

Colleen Dolan, P.J., and
Kelly C. Broniec, J., concur.

22
 We recognize that our affirmance of the July 2020 amended judgment will ultimately result in Mr. Lowe’s
attorneys receiving a sum of money (a total of $5,215,330.40) that is greater than the net sum of money received by
the Estate of Vincent Lowe after the estate pays Mr. Lowe’s attorney’s fees and litigation expenses (a total of
$4,492,509.22 in past economic damages, past non-economic damages, future non-economic damages, and medical
damages). Although this outcome, when viewed in isolation, may seem unjust to some, we find it is just and correct
as a matter of law in light of the facts and entire procedural posture of this case for the reasons discussed in this
opinion. We also note there is no established principle that portions of a damages award pertaining to attorney’s
fees and litigation expenses may not exceed portions of a damages award pertaining to past economic damages, past
non-economic damages, future non-economic damages, and medical damages. See Berry v. Volkswagen Group of
America, Inc., 397 S.W.3d 425, 431 (Mo. banc 2013) (similarly noting in relevant part that “there is no established
principle that [an award pertaining to attorney’s fees] may not exceed the damages awarded”).
 34